On behalf of Ponto, Mr. Eric Carlson. On behalf of the City of Dixon, Mr. Stephen Barlow. On behalf of LeBron, Mr. Ted Panto. Are you all prepared to proceed? And I understand that you have given the clerk a prescribed way that you wish to address the arguments and that's agreeable to all parties? Yes. You may proceed when you're ready. Good morning. My name is Eric Carlson and I represent the plaintiff, Denise Ponto. May it please the court. By way of a little bit of background here, this case involves a car accident that occurred on February 2nd of 2008 in Dixon, Illinois. The defendant, Dale LeBron, hit a patch of ice and crossed the center line and caused a head-on collision with the plaintiff, Miss Ponto's vehicle. At trial, the jury awarded damages of approximately $585,000 and attributed fault with 65% going to Mr. LeBron and 35% towards the City of Dixon for failing to maintain their water hydrants, which is what caused the ice to be on the road. The suit was initially brought against Mr. LeBron and he in turn brought a third-party suit against the City of Dixon. Following the jury trial, an issue came up as to whether or not there was direct liability by the City of Dixon towards the plaintiff. And the primary issue here is really an application of the joint and severability law, which is 735 ILCS 5-2-1117, which says in pertinent parts that, quote, all defendants are jointly and severally liable for medical damages and, quote, any defendants whose fault is greater than 25% are jointly and severally liable for the remaining damages. Counsel, I have a question regarding the motion that you brought in the trial court to bring in the City two years after the accident. Yes. You argue in your brief that it would be consistent with the purpose of the very short one-year limitations period of the Tort Immunity Act to encourage early investigation of a claim against a local government while it's still fresh, and that in this case the City was on board from the beginning, so allowing the suit against the City would have been consistent with that policy. However, what authority do you have to indicate that the statute of limitations was told to allow that to happen? Actually, the authority, I believe, comes directly from Section 2-406, which states that if the plaintiff desires, they may add a defendant as a third-party defendant. We did not, frankly, need to add the defendant. That's as a third-party defendant, but I'm asking, they wanted to, the plaintiff wanted to bring the City in as a direct defendant into the lawsuit. Yes, and that was brought up later on once we realized that an argument that the third-party defendant was going to be making, in which they, in fact, did make a trial, was that somehow they did not have liability because they had not been sued directly. We still believe that all along there's always been liability that flows from the third-party defendant directly to the plaintiff here. And how does that work? Because they haven't brought into this lawsuit. They are actually a party to this lawsuit. They're a third-party defendant. Yes. They are 100% negligent, and they are an approximate cause of this accident. Well, that may be true, but there's a different statute of limitations involved. I mean, is it not true that generally a statute of limitations continues to run unless its tolling is authorized in some statute? I would agree with that statement, yes. So where is there any expressed language in 2-406 that trumps the statute of limitations? Or is this a case of first impression? I think this actually is a case of first impression here. But the fact of the matter is the statute of limitations had been properly met when the city of Dixon was brought in by LeVon. There's no issue that that is improper. So they are a party to this lawsuit. When you say that relates back, is that what you're arguing? Well, it's not quite the same as a relation back. The relation back deals with some different issues. Okay. So how does that work then? But once they have been properly brought into the lawsuit, the lawsuit has commenced against the city in a timely manner. How does your suit as plaintiff against the city when they're a third-party defendant? I mean, what's the purpose of having third-party defendants? Why don't we just make them all defendants and all plaintiffs? Well, I think that they actually are all defendants under the law. Section 2-401 specifically indicates that unless the contrary meaning is indicated, the term defendants includes third-party defendants. In this case, they are actually a defendant in this case. We did not bring them in initially. And by the time that they were brought in, the statute of limitations had run for us, but they were actually brought into this case. Once they were brought into this case, they became a defendant. Well, but doesn't their liability depend on the Contribution Act, though? Their ability to be brought in depended upon the Contribution Act. And, yes, their liability is related through the Contribution Act, but I don't think that that in any way— The defendant brought them in. Correct. Yes. Not the plaintiff. But that doesn't invalidate joint sever liability. That doesn't invalidate the fact that their liability ultimately is to the plaintiff here. The claims that the defendant made were derivative claims. There's no separate— Which defendant? Are you talking about Mr. Levine? Levine, yes. This isn't a separate and independent cause of action. This is a derivative claim. This all arises out of the same set of facts. It's the same injury. These are concurrent, or perhaps more accurately, consecutive tort feasors, but nonetheless joint tort feasors for this one indivisible injury. Counsel, are you aware of this case? It's GREWENIG v. American Baking Company. It's a case from 1938, the appellate court, but it states, generally in a tort action, a party cannot be brought in as a defendant after a limitations period has run in his or her favor, although the action against the original defendant was commenced within prescribed statutory time. Isn't that what we're talking about here? GREWENIG is actually a different case. That one involved, I believe, if I remember correctly, a case where the lawsuit was initially brought against one company, and that company, through some various sales and disillusions, was no longer in existence at the time of the actual injury. So it turned out that they had sued the wrong corporate identity. And actually, I think under the current Relation Back statutes, they would have been able to use Relation Back in that instance. But that has nothing to do with third-party defendants who were brought in within a properly prescribed time. And it doesn't discuss the issues specific to this case at all, which involve a third-party defendant actually having liability through a derivative claim to the plaintiff. Well, let me ask you this on this derivative claim. If we were to accept the logic of your argument, when would the statute of limitations ever apply to third-party defendants under your scenario? It could be commenced years later, couldn't it? Well, if the statute of limitations were such that it would allow a third-party claim to be brought, then yes, the statute of limitations would still allow that third-party defendant to be brought into a lawsuit and to be liable. And that's what the third-party complaint is actually doing. So there is no statute of limitations then? Well, I don't think that that's actually correct. The Contribution Act, what it does is it extends the statute of limitations. I believe in this case it extended it for one year because that's the time when we are under, I believe it's several cases, but I believe Stevens v. McBride is one of the cases that indicates that the statute of limitations is extended on these third-party actions for contribution claims. But that's different than what we're talking about here. Well, what we're talking about here The third-party action is different than the plaintiff bringing in the city as a direct defendant. Yeah, and I think that that was actually done, you know, as kind of a secondary, that's really our secondary argument. The primary argument here is really the application of the Joint and Several Liability Act. And I think that that really involves a very simple statutory construction. When you look at the terms used within that act, as well as Section 2-401, which specifically indicates that defendants includes third-party defendants, there's no way that any and all defendants can be considered to be exclusionary terms. Those terms aren't ambiguous, and they don't limit who actually has joint and several liability to the plaintiff. Those arguments were never addressed whatsoever by the city of Dixon in this case. They didn't raise any response to the fact that any and all defendants are inclusionary terms. They didn't raise any response to Section 2-401, which specifically within the Code of Civil Procedure defines defendants as including third-party defendants. I believe that this also, this result also corresponds with what the finding of the jury was. The jury, specifically in the jury verdict form, found that both LeVon and Dixon had, quote, legal responsibility here. In this case, Dixon is attempting to shirk all legal responsibility and just say because there's a certain insolvency on the part of LeVon that they are not responsible for actually having proximately caused the injuries to the plaintiff. But isn't their liability limited to LeVon? Their liability actually flows through and becomes a derivative liability and say the party who was injured here is and always will be Ponto. LeVon was not injured in this case. LeVon was not injured by having to pay to compensate for Ponto's injuries. But whose right of contribution is it? Is the right of contribution to the joint tortfeasor or is there a right of contribution directly to a plaintiff? The right of contribution exists to the joint tortfeasor, but they ultimately are joint tortfeasors. And the law is very clear from Unzinger and from other cases as well that the joint and several liability must be applied first before addressing contribution. That's if a third-party defendant is any defendant. I'm sorry, say that again? That's your premise, though, is that a third-party defendant falls under that definition of any defendant. Correct. Counsel, do you wish to respond? Good morning, Justice. My name is Steve Baylow on behalf of the city of Dixit. It sounds to me from the questions I'm hearing that the court understands exactly the real issue here. And the real issue is as to the contribution claim against the city of Dixit, that claim exists only in favor of Dale LeVon and not in favor of Denise Ponto, who did not sue the city of Dixit. The city of Dixit was not a defendant in this case, as is given its ordinary meaning. It was a defendant in contribution only. But wasn't the city equally liable along with LeVon? There was no, I will concede in a heartbeat, that the city of Dixit was found by the jury to have been 35 percent at fault for causing this accident. But what that means is only what's reflected in the court's judgment, and that is that if and when, pursuant to the Contribution Act, Dale LeVon pays more than his pro rata share of the judgment, i.e., 65 percent of $585,000, when he pays more than that amount, then he has a right of recovery against the city of Dixit for whatever he paid in excess of his pro rata share. But wouldn't this interpretation and that of the trial court have the burden of LeVon's insolvency fall on the plaintiff? It does, in fact, which is exactly what happened in the Unsecker case, which is exactly what happened in the Stevens case, which is exactly what happened in this court's case. And I'm going to mispronounce this, but I think it's Sacalaratus, which was a case where one of two defendants settled out before the case went to trial, paid $150,000. The verdict came back for something in excess of $500,000, and the trial court and this court affirmed that the non-settling defendant was responsible for only 50 percent of the total judgment, because to do otherwise, although it placed a burden on the plaintiff, would have run contrary to the settlement agreement in terms of the Contribution Act. The Contribution Act creates a right only between joint tort feasors. What makes this case, the case before the court, different than a lot of the cases we're talking about is the fact that the city of Dixon, although it could have been sued, never was, at least by the plaintiff. Mr. Counsel, how do you respond to this argument? Isn't that construction a little harsh and maybe not consistent with public policy where under the circumstances the plaintiff could go forth without day and not recover anything? In fact, that is the result, but I don't see it as any more harsh than the plaintiff who suffers because the cause of action wasn't filed within the statute of limitations. I don't see it as any more harsh than the fact that because of UNSCR, because of Section 211.17 and amendments to it, a defendant can no longer argue to a jury or to a court at trial that part of the fault ought to be apportioned to a party that is not before the court. Because the only people who can have full apportionment to them, according to 211.17, are the defendant, the plaintiff, and any third party plaintiff except for the employer. So the universe of 100% is limited only to parties that are before the court. So if the plaintiff chooses to sue parties that maybe, as a matter of fact, bear very little fault and doesn't bring the parties who are at fault, who perhaps maybe don't have deep pockets, those parties who bear little fault may be found by a jury to be 60, 70, 80% at fault simply because of the harsh effect of the joint and several other factors. The opposing counsel's argument has some superficial appeal, I suppose. Okay, the city's already in the case. The city already knows what's going on. What's the prejudice to the city now? It wasn't like they were taken by surprise. Well, the city was not taken by surprise in that they were sued in the contribution claim. If, for some reason, we were to say, for example, the principles of equity, it would be unfair to this poor plaintiff that she ought not be able to recover simply because of the policy limits of the direct defendant, that certainly would work prejudice to the city of Dixon. And put in simple terms, if I have to go back to the city and tell them, oh, by the way, you're now on the hook for $485,000, I would say that would be prejudice and surprise when we've been operating under what I think is clear and existing law. The Stevens case is, you know, it's rare when we practice, especially when we practice before the appellate courts, that we find a case that seems so on all fours. But the Stevens case seems to be exactly the situation we have presented here. And it's dispositive and says that there is no tolling, correct? The Stevens case says it hits both of those issues. It says that you've got one year from the time the suit is filed against you, defendant, to bring in the municipal entity as a third party defendant. And it also says, and you don't have to worry, municipal defendant, about having to pay directly to the plaintiff because since you've not been sued as a defendant, as a direct defendant. You will never have to pay the plaintiff directly or indirectly, I think is the words that our Supreme Court uses in that opinion. So I do think it controls on both of those twists, the 2406 of the Civil Practice Act and the, you know, Contribution Act, contribution liability claim. So I think, as the Supreme Court said in Unziger, the Contribution Act and the Contribution Among Joint Tort Feasers Act and the Joint and Several Liabilities Statute in the Code of Civil Procedure, they're different statutes. They don't, you know, one doesn't even come into play until the other one has been gone into effect. Once Among Joint Tort Feasers, contribution is triggered, then the assessment or the apportionment of fault makes a difference, and only that. Because they're- You're saying that the joint, we don't look at the Joint and Several Liabilities Statute first and the contribution- As a practical matter, the apportionment of fault is made first. Okay. But it only matters once a defendant has paid more than his pro rata share of the liability. I see what you're saying. If there's no more questions, we have a cross appeal, and I'd like to bring that up briefly. Prior to trial, by way of a motion to dismiss and several times during the trial and in the jury instructions, and it's laid out in briefs, but for purposes of this appeal, just so it's clear that this issue was never waived, the city of Dixon raised what's commonly known as discretionary immunity under Section 2-201 of the Illinois Tort Immunity Act. At that point, can you address the issue of whether or not the actions taken by the municipal employees were, in fact, final decisions and policy determinations? And while you're doing that, since time is limited, if you can also address whether or not really what the city was doing at the time was ministerial because it was implementing the plan that had been devised. Well, and that's what the trial court said, but factually that's not correct. So getting to the end first. We know because of cases like Hanarik and its progeny that what the Supreme Court has told us is a two-step analysis. Number one, it has to be an individual because municipalities can only act through individuals. It has to be an individual who is in a position where he or she can exercise discretion. And then at the time of the action giving rise to the suit, they had to actually have been exercising discretion. The trial court apparently, and I'm reading between the lines of it, found that the plan was being implemented. And if you look at cases like Snyder and cases of that type, they talk about once the plan is being, once the decision has been made, once the discretion has been exercised, then the plan has to be implemented in a manner free from negligence. Should I? Okay. So the first step, the people involved in this decision. I think we can agree that they were both in discretionary positions. It's the second two points. What you have to realize, and it's a factual question, and in the case of Seda, you have to look at the facts of each situation. What was going on was the water main essentially takes a right angle bend or a little less. And at the point where it bends, there's a shutoff valve. Now, to the, what is south and west of the bend, they have several weeks, and they decided or were in the process of planning to replace a 2,000-foot section. That replacement project did not actually begin to occur. It wasn't even finally approved until months after this accident. They were just in the process of beginning to plan for the replacement. And then the argument that the plaintiffs made at trial or that the plaintiff and the third-party plaintiff made was that we didn't go far enough. We should have gone to the east and north of that same shutoff valve because it was about ten feet from that valve where this leak occurred. And the city's position was we weren't planning to replace there because until this leak, we weren't aware of problems in that area. So bottom line, your point is that if they're still in the planning process, we're still talking about it, we're still possible to change, that's all the exercise of discretion. That clearly is the exercise of discretion, planning how far to take the project, the scope of the project, the cost of the project, inconvenience to customers. All of those things were being taken into account at the time of this accident. Well, counsel, let me ask you this. Wasn't there evidence on December 3, 2007, the city entered into an engineering agreement to replace the faulty pipe? Wasn't there an agreement at that point before the accident to replace it? They did not enter into an agreement to replace the pipe. They entered into an agreement to do a study to see how it would be engineered. It's an agreement to get the engineering study, which is step one. Let's figure out how we would do this. Now, in the case of the actual repair to this actual leak, I would concede that that was ministerial because all they do is they dig a hole around it, put a collar around it, tighten the collar around it, fill a hole in it. There was testimony about what's the standard procedure for a leak, but plaintiff's own expert came back and said, but when you have three, four, five leaks in the same area, it's a bigger problem, and then you have to start planning for maintenance. So I would say, and the final point I'd make with the permission of the court, is the fact that we're sitting here arguing about whether the facts of this case present one for discretionary immunity would suggest to me that the trial court had to have made an error in not at least letting it go to the jury. The city of Dixon was not even allowed to make the argument to the jury that under these facts it was exercising discretionary immunity. What remedy are you asking for? Well, I would think that we could, that the court could either reverse and, in effect, bring directed verdict or judgment in favor of the city of Dixon on discretionary authority or, in the alternative, remain for new trial. And I would think that the former, that is, judgment for the city of Dixon, would not have any practical impact on the current standing of the parties, because as has already been conceded in opening argument, Mr. LeVan is, in essence, judgment-proof beyond $100,000. Any other questions? Thank you very much. Thank you. If I may, I'd like to first respond to his argument that the Stevens v. McBride case is on point. Stevens v. McBride didn't actually involve any of these issues. It was a point of dicta at the end of the case in which the court stated that the plaintiff was not going to be able to collect directly or indirectly from the city. However, the plaintiff was not a party to that appeal. The plaintiff made no arguments on that issue. Actually, the court even cited to a California case out of a different jurisdiction, and if you read that California case, the language which was cited was actually brought up in a hypothetical. In both situations, the court is dealing with a complete hypothetical. These are not issues which were actually before the court. Furthermore, and I think this is the most important point, was that Stevens was decided in 1983. However, the Joint and Several Liability Act was not passed until 1986. So whatever the rights may have possibly been under the common law are quite irrelevant here when we have a statute which specifically says any and all defendants. And so I believe that Stevens is not on point whatsoever. City of Dixon also claims that the burden of insolvency falls on the plaintiff and that it's happened in many cases. He claimed that that's happened in Unzicker. That's not what happened in Unzicker. The reason that the plaintiff could not collect from the third-party defendant in that case had to do with the Kotacki problems. The third-party defendant was his employer. There's no indication that there was any insolvency in that case. He claims that that's what happened in Scaladaris. Scaladaris was a case that didn't even involve joint tort feasors. Those were two completely separate car accidents that were involved into one trial for the ease of the court's time. But there was no joint sever liability even at issue in that case, and that's what it ultimately came down to in Scaladaris. Finally, he claims that that's what happened in Stevens. And once again, Stevens did not involve any—there was no judgment at that point. The insolvency of the third-party plaintiff is not mentioned ever in Stevens. We don't know if that party is insolvent. There had been no judgment in turn. There had been no attempt at collection. So to claim that all of these cases already show that the burden of insolvency would fall on the plaintiff is simply not in cases. Counsel, what's your response to the city's cross-appeal? Yes, I think the main response in this one has to do with the second prong, which is whether or not the city was actually exercising discretion at the time, and in this case with the omission of failing to repair the pipe. However, throughout their argument at trial, they argued that they had no idea that that section of pipe was faulty. In fact, Rusty Cox, who was the water department personnel, stated that it wasn't until November of 2008, some nine months after this accident, that he had any inkling that this section of pipe where the accident actually occurred was having problems. They specifically distinguished other problems that had occurred in that area, claiming that there was a water handling problem occurring with the fire department, and that's why a leak had occurred nearby. And they said again and again, we had no idea that there were any problems in this area. You can't be exercising discretion if you're claiming that you have no idea that there's a problem. You can't say that I knew that there was a problem there but chose not to address it. That's not what they're claiming. They're claiming that they had no idea that there was a problem. Their discretion that they're discussing is actually in what they described as a completely separate section of pipe. All of this comments about, you know, deciding when to implement a certain plan, when to replace things, the agreement that they had to get the engineers in, that's all in a completely separate section of pipe, and so I think that's completely irrelevant. The discretion was not on this section of pipe. Well, can you clarify, when did the city enter into an agreement to replace the faulty pipe in question? Do you know when that happened? That had occurred, I believe, prior to this. Actually, to replace the pipe in question here, they didn't enter into an agreement to do that until long after the accident. I think they first identified it as a problem in November of 2008, and I don't recall when the replacement took place, but it was long, long after that. I think the question is the agreement to do the study. Do you know when that was entered into? I think the agreement to do the study was what you had referred to in your questions, which was December of 2007. And that was actually the agreement to do the study for the pipe under East River Street. The road actually, Route 2 actually kind of veers off of the road that runs along the river. It's called River Road in this section, and then it veers up, and East River Street goes straight, but Route 2, the main throughway, veers up a block and makes a job right there. So they distinguished those as being two separate pipes that are separated by a shutoff valve. There's no discretion that's going on, though, for this particular piece. And I believe, actually, Attorney Pankow was going to address the court with regards to the cross-appeal on those issues, so he might be better prepared to take those questions forward. Anything else? Anything else? OK. Good morning, Your Honors. Ted Pankow on behalf of the defendant and third-party plaintiff, Dale LaVon. It's my privilege to be here before the court this morning, and I'm going to make some preliminary points, but I would like to spend the bulk of my time defending our contribution judgment against the city's cross-appeal. Our first preliminary point is that we renew a motion to dismiss for lack of jurisdiction and the first argument in our brief. We believe that when Ms. Pankow filed the original notice of appeal, that was only vis-à-vis the city. We were not a part of that. Mr. LaVon had not been carried up to his court's jurisdiction in the original notice of appeal. The city purported to cross-appeal and bring us up. We contend that that was defective. Then when we filed our separate notice of appeal, the city never amended its notice of appeal to include us, so it's our position that, jurisdictionally speaking, the city's cross-appeal against Mr. LaVon's contribution judgment is defective. The second preliminary point I'd like to make, Your Honors, again, as we've briefed it, I would direct the courts specifically to page 21, footnote 7 of our reply brief, where we summarize how we believe that the Joint and Civil Liability Statute and the Contribution Act play together. Again, it's our position, along with Ms. Pankow's, that Section 211.17 is inclusive of Section 2401, so all defendants found liable, including third-party defendants found liable, are jointly and severally liable for the plaintiff's medicals. Further, any defendant whose fault is 25 percent or greater, including third-party defendants whose fault is 25 percent or greater, are also jointly and severally liable to the plaintiff. Our logic under the Contribution Act is that Section 2 is indeed Mr. LaVon's right of contribution, but there are three other provisions in the act that are equally important here. Section 3 allows and gives the option that the city would have to contribute more than its pro rata share, precisely because, above and beyond $100,000, Mr. LaVon's obligation is uncollectible. Given that it's uncollectible, the city has to share an unpaid portion at its 35 percent. And what case law supports that decision? Plain text of the statute, Your Honor. It's independent and controlling in and of itself. Are you distinguishing it, Steve, as you're saying, because of a statutory amendment, basically? The issue was neither raised nor briefed nor argued in Stevens. So, in essence, I suppose under the case law, we have a question of first impression, and the guiding principle is taken from the statute. And we believe the statute is clear without any independent case law to construe it. Finally, under Section 3, we know the final sentence, if equity requires, the collective liability of some as a group shall constitute a single share. So, even in the Contribution Act, Mr. LaVon's liability and the city's liability are a single share. It's not contingent on anything you're saying. Pardon me? It's not contingent on LaVon's ability to pay, not theirs. Well, it is, because just prior, it's, again, if it's uncollectible. Our position is Section 3 allows a safety valve, which is the first step towards getting the plaintiff her full judgment. Because, again, the burden of insolvency falls among the joint tortfeasors, and in this case, the burden of Mr. LaVon's insolvency above $100,000 falls on the city as a joint tortfeasor. Then, finally, Section 4 is a specific preservation of Ms. Ponto's right to pursue the full amount of her judgment from any one or more of defendants, including third-party defendants, subject to liability and tort for the same injury to person. Because the city is jointly and severally liable with Mr. LaVon, Section 4 is Ms. Ponto's preservative. In light of Section 3, how the city can pick up more of the judgment, Section 4 is Ms. Ponto's preservative. Now, how do you interpret, then, 2B, the last sentence, no tortfeasor is liable to make contribution beyond his own prorated share of the common liability? Inartful drafting, Your Honor. Because if Your Honor is going to focus on 2B, then we have to read out Section 3, which talks about exactly how the city can be required to pay more than its prorated share on the condition that Mr. LaVon is insolvent. So, under statutory construction, the court is obligated to, even when there's an apparent conflict, harmonize the statute to give the full effect of the legislative intent. So I would submit, Your Honor, that Section 3 trumps Section 2B. Do you have any case law that says that? A case of first impression, Your Honor.  Plain read of the statute in light of what it's trying to do, Your Honor. Turning now to defending our contribution judgment against the city, I do want to highlight certain facts because they are important. Between April 2006 and February 2008, the city of Dixon suffered a rash of nine or ten water main breaks prior to this accident. Now, nine or so were along East River Street in town, but one, in fact, before this accident, October 26, 2007, was on East River Road at the outskirts of town about ten feet from the eventual accident site. Our expert, David Jacobson, unrebutted, testified that by the third break in November of 2006, the city should have been studying the water main problem. In other words, the proverbial one free bite. The city got two free breaks, but the third one they needed to investigate. December 2007, they entered into the project only dealing with East River Street in town. That project does not begin until a month after the accident. So March 2008 is when they even start replacing the water mains in town. Our accident happens on February 2, 2008. Undisputed, a broken water main was sending ice and water and ice onto the road and played a role in the collision. Between March and November 2008, that's when the city is entering and studying the second phase of the project to replace the water mains along East River Road outside of town. That now includes the accident site. However, that work doesn't begin until sometime in 2010. Now, as a matter of law, we absolutely fundamentally dispute any suggestion that discretion can play a role in this case. And that's why we present a little legal history lesson or a brief for several pages. Because it's been a common law of the state of Illinois from the Illinois Supreme Court back in the 19th century. A city's obligation with its public property to ministerial duties. The duty to inspect to determine that the property is deteriorating or not deteriorating under weather and climate conditions and so on and so forth. That duty to inspect has been ministerial for over 100 years. The duty to maintain has been ministerial equally for a century or more, as long as the Illinois Supreme Court has been talking about the duty of municipalities and local governments to take care of public property. So, fundamentally, the discretionary immunity never comes in. The duty over and over and over again is stated to be ministerial and mandatory and inescapable. It's the duty of ordinary care in inspecting and maintaining the property. It's undisputed that the city breached its duty to inspect the water mains. They testified flat out they had no system of inspection. Our expert testified unrebutted that it's just a simple matter of using city crews, a backhoe, digging a few test pits, examining the pipe, in this case it's 100-year-old cast iron, looking at it and going, that's no good, especially given the fact that they've had 3, 4, 5, 6, 7, 8, 9 breaks, walking its way up, creeping its way up East River Road or up East River Street to East River Road. The city had no inspection system, so it breached its ministerial duty to inspect its public property, the water mains, for safe or unsafe conditions. Consequently, it also necessarily and automatically follows, because it wasn't inspecting, it couldn't maintain. The duty to maintain, or in this case replace, the water mains was also breached because the city didn't know how bad it was. Superintendent Cox testified, well, yeah, if we had an inspection system, we would have seen how bad the pipe was, and yes, we would have in fact replaced the East River Road pipe. So, again, it's the duty to inspect, ministerial, breached.  The city injects discretionary liability. And I need to back up, actually. On our prima facie case, our three court cases would be... In that case, the plaintiff insufficiently pled the facts. Therefore, there was no duty. We would also direct the court to Stosen v. Checker Taxi Company. That's the first district case, 1947, which again stands for the proposition that there is liability. When a city water main causes a pothole, the taxi cab ran over it. It was the city's water main, but the states were on. The city's water main caused the pothole that caused the injury. Well, wasn't it true that Cox was devising a plan to improve the water main at the time of this incident? As a matter of fact and law, Your Honor, there's another important issue. It was not an improvement. The issue of an improvement is new property or an addition to new property that substantially increases its utility or value. We're looking at it from the standpoint of repair or maintain, repair, replace. Improvement is the last step. The property, the water mains were already there. They needed to be replaced or substituted. And the reason why this is important is I would use the following analogy to explain why improvement is fundamentally different and not in play. So one's ministerial and one's discretionary, is that your point? Absolutely. Improvement is discretionary. Right. Thanks, Russell. Again, counsel, if you could wrap up your point. Okay. The analogy simply is this, Your Honor. Imagine a one-story house. A few shingles are loose on the roof. You repair the shingles by tacking them down. Replacement is you strip off all the shingles, replace the plywood, put on a new roof. An improvement would be building a second story to that one-story house. It adds the utility. It adds the value. It does something new instead of replacing or repairing what's already there. How could you improve a water main? By installing a new system. And that's not what we have here because the water main was preexisting for at least 100 years. But is the point of the water main to get water from point A to point B? Absolutely, Your Honor. So under your analysis, it would seem that it could never be improved. It could only be replaced. Probably not. Because if the city wants to make this a case of improvement, it was their burden, Your Honor. Under your scenario, unless they made the water go in a new direction or purified it on the trip, it would only be replacement. Any installation of a new line, say, out to a new subdivision, that would be an improvement. But my point is any water main in the city that already exists could never be improved. It could only be replaced. Correct? That's your argument. Absolutely, Your Honor. So basically your argument, taken in the next step, imposes really 100% liability for any water main leak on the city because it could always be replaced. Excuse me. It's only being replaced. It's therefore always a ministerial act. Therefore, there can never be any immunity. Is that your argument? Our argument would be that the duty to inspect and maintain is ministerial, the inspection and maintenance program. But it wouldn't be strict liability because there would always be the issue of ordinary care in the inspection and maintenance. So, in other words, it wouldn't be strict liability because the city just can't step back and say, we didn't have to do it. The city could say, we have an inspection plan, we have a maintenance plan. Both of those were exercises of ordinary care. In this case, there was an absolute breach because no care whatsoever was exercised. Okay. Anything else? I'm well-considered unless there's something from the court about it. Thanks. Thank you, Your Honor. I believe, Justices, that the, I've kind of forgotten the terms of our little arrangement, but I think the city of Dixon gets the last word. So I'll try to be extremely brief and then answer any questions. As to the statutory construction being answered regarding the joint liability provision of the Code of Civil Procedure, counsel stood up here and said that it includes third-party defendants, including, and used the word includes several times. If you read the statute, the word include or including doesn't appear in the statute. It, in fact, says any defendant whose fault as determined by the trier of fact is less than 25 percent of the total fault attributable to the plaintiff, the defendants sued by the plaintiff, and any third-party defendant except the plaintiff's employer shall be severally liable for the damages. The next sentence goes on and says it's exactly the same except more than 25 percent is jointly and severally liable. It actually makes a distinction between a defendant sued by the plaintiff and a third-party defendant. And as I said when I stood up here originally, all that's doing is saying 25 percent of this universe of parties before the court. And that could be the plaintiff, which is in here, a defendant sued by the plaintiff, or any third-party defendant unless it's the employer. So I would say the statutory construction argument doesn't work. And not only is there no authority, in the Unziger case, they specifically found, the Supreme Court specifically found that these two statutes, the Contribution Act and the joint liability provision of the Code of Civil Procedure, do not conflict because they're separate statutes. And as I said the first time I was up here, the joint and several liability provision of the Code of Civil Procedure applies to third-party defendants only after the Contribution Act comes into play. Had Denise Panto sued the city of Dixon, we wouldn't be here because they would be jointly and severally liable directly to her in accordance with 211.17 of the joint liability provision. Regarding the argument on discretionary immunity, the argument that I just heard kind of strains credulity in that if, and I think Justice Jorgenson picked up on it a little bit, if replacing a half a mile of water main isn't an improvement, a plan for improvement, how in the Roble case decided by this court could filling potholes be an improvement that would involve the exercise of discretion? That was a case where they found that the laborers out there in the street filling potholes had to make decisions based on cost, based on the weather, based on how much water was in the hole, and that every time they filled a pothole, they were making an improvement and exercising discretion in doing so. Was that case perhaps a little too far in the other direction? I don't know, but I know that that case has withstood time. The fact of the matter is, and counsel did correctly explain the facts, the fact of the matter is that at the time of this accident, the city of Dixon, through its water superintendent and its director of public works, was engaging in a plan for improvement of a stretch of 2,000 feet of city water main by replacing it, and that the allegation that was pressed throughout trial was that the city of Dixon was negligent because its plan for improvement did not go far enough and was not implemented quickly enough. Section 2201, which was, you know, which abrogated the common law, by the way. I heard a 1908 case cited up here. The common law on municipal liability, tort immunity and all that was changed by the Tort Immunity Act. But it's clear that discretionary immunity was being exercised, or discretion was being exercised at the time of this occurrence through a plan of maintenance and improvement of the city's water mains. Thank you. Thank you both very much, all three of you, excuse me, all very much. We are in recess.